**Lavergne MARSHALL,
Plaintiff–Appellee,**

v.

**Gary L. GRAUBERGER,
Defendant–Appellant.**

**No. 89CA0051.**

Colorado Court of Appeals,
Div. I.

March 15, 1990.

Rehearing Denied April 12, 1990.

Certiorari Denied Sept. 10, 1990.

Makris and Hunsaker, P.C., William J. Hunsaker, Nicholas Makris, Denver, for plaintiff-appellee.

Cogswell and Wehrle, P.C., John M. Cogswell, Denver, for defendant-appellant.

Opinion by Judge STERNBERG.

Gary L. Grauberger (the husband) appeals the order of the trial court determining that he breached a fiduciary duty owed to his ex-wife, Lavergne Marshall, and assessing damages and costs resulting from such breach. We affirm in part and reverse in part.

The parties were divorced in 1985. The husband was president and majority shareholder of U.S. Minerals Exploration Company at that time. The property settlement agreement between the parties gave to the wife certain shares of that company's stock and also provided for her to receive an additional 500,000 shares to be transferred to her within five years, during which time the husband maintained all powers over the stock. He could sell the shares at any time within the five-year period.

In 1986, the husband disposed of the 9 million shares of stock remaining in his own name, making a significant profit.

However, he did not sell the 500,000 shares he was holding for his ex-wife. Thereafter, when the stock declined in value, the wife brought this action.

### I.

First, the husband asserts that the trial court erred in determining as a matter of law that a fiduciary duty existed. We disagree.

### A.

The existence of a fiduciary relationship here arises, if at all, from the undisputed terms of the separation agreement entered into between the parties at the time their marriage was dissolved. Therefore, the determination of the effect of that agreement as a matter of law was proper. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508 (Colo.1986); *Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984). In fact, the husband conceded that there was no material issue of fact when he sought summary judgment that a fiduciary relationship did not exist.

### B.

■ Next, our examination of the separation agreement leads us to agree with the trial court that the husband owed a fiduciary duty to his ex-wife.

The pertinent provisions of the separation agreement provided that:

"The parties agree to divide their personal and real property including any business interests which they may have as follows:

"(1) The wife shall receive as her sole and separate property the following:

. . . .

"(g) An additional five hundred thousand (500,000) shares in U.S. Minerals Exploration, which shall be transferred to her no later than five (5) years from the date of the entry of a Decree of Dissolution severing the marriage of the parties. Said five hundred thousand (500,000) shares shall, until their time of transfer pursuant to this Agreement, or until

their sale, remain in the name of the Husband, who will have the power to vote the said shares, pledge as collateral or make any other use of the said shares of stock as if he were the owner of the said shares. At any time during the five (5) year period, the Husband may elect to sell any or all of the five hundred thousand (500,000) shares within his sole discretion, and, upon such sale, all capital gains taxes due and payable on such sale shall be paid and the Wife shall receive the balance of the proceeds of such sale at the time such sale occurs, whether or not the five (5) year period has run.

. . . .

"(2) The husband shall retain as his sole and separate property, the following:

"(a) Any and all interest he may have in U.S. Minerals Exploration Company, except those shares which will be set apart for the use and benefit of the children and the wife as set forth in paragraph 8 and 9(1) above."

The trial court found as a matter of law that the husband owed the wife a fiduciary duty to "deal with her interest with the utmost good faith."

The husband asserts that this finding of a trust and the existence of a fiduciary duty was error because wife had no interest which was entrusted to him until such time as he sold or transferred the stock to her. He also argues that the provisions of the separation agreement which allowed him to sell wife's shares of stock "within his sole discretion" and allowed him to "make any other use of the said shares or stock as if he were the owner of the said shares" are inconsistent with the notion of "entrustment" as that term is used in defining a fiduciary relationship. We disagree.

■ The use of the word "trust" is not necessary to establish a legally sufficient trust. *See In re Estate of Granberry v. Claim of Baker,* 30 Colo.App. 590, 498 P.2d 960 (1972). We agree with the trial court that here a fiduciary duty owed by husband to his wife was "created by his undertaking" to hold title to or to sell wife's 500,000 shares during a maximum period of 5 years. Therefore, husband had the obli-

gation as a fiduciary to exercise reasonable care and skill in his administration of the trust was created by that undertaking. *See Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988); *Fulweiler v. Spruance,* 43 Del.Ch. 196, 222 A.2d 555 (1966); § 15–1–802(3)(a), C.R.S. (1987 Repl.Vol. 6B). And, he was subject to liability to wife for any harm resulting to her from a breach of the duty imposed by the relationship. *Destefano v. Grabrian, supra.*

## II.

■ The trial court concluded that the husband, as a fiduciary, had the duty to sell the shares of wife's stock which he held in his name for her benefit at the same time and under the same conditions as he had sold his own 9 million shares.

The husband asserts that the trial court erred in determining that by failing to do so he breached his fiduciary duty. We are not persuaded by his arguments in this regard.

The fact that the husband had the "discretionary control" of the wife's shares made him a fiduciary in a broad sense with wide-ranging duties. *See Rupert v. Clayton Brokerage Co.,* 737 P.2d 1106 (Colo. 1987); *Paine, Webber, Jackson & Curtis, Inc. v. Adams, supra.* Despite having the power to sell the stock within his sole discretion, the husband still was required to operate within the bounds of prudent judgment, reasonableness, and equity. *See Rippey v. Denver United States National Bank,* 273 F.Supp. 718 (D.Colo.1967); §§ 15–1–804 and 15–1–304, C.R.S. (1987 Repl.Vol. 6B).

■ Here, in determining whether the husband abused his discretion, the external standard of reasonableness, the husband's motives, and the existence of his own interest as a shareholder of U.S. Minerals were relevant circumstances, among others, for the court to consider. *See* Restatement (Second) of Trust § 187 comment d (1959). A fiduciary may not allow his own motives to interfere with the discharge of his duties. *Wright v. Wright,* 182 Colo. 425, 514 P.2d 73 (1973).

Moreover, the trial court's findings need not detail the reasons for refusing defendant's affirmative defenses. *See Uptime Corp. v. Colorado Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966). And, since the husband has not alleged that the wife represented an intent not to pursue her legal remedies or exhibited sufficient conduct upon which he could have reasonably relied, we find no error in the trial court's determination that the husband failed to establish the defense of estoppel. *See Johnson v. Industrial Commission,* 761 P.2d 1140 (Colo.1988); *P–W Investments, Inc. v. City of Westminster,* 655 P.2d 1365 (Colo.1982).

## III.

The husband also contends that the trial court erred in determining damages. Specifically, he alleges error in the dates from which damages were computed, the court's failure to discount the damages, and the rate of capital gains tax used. We disagree.

■ A trustee's duty of loyalty and of reasonable care dictates that he must seek to obtain the best price for trust property he is selling. If a trust has been damaged but there is uncertainty as to the extent of the damage, damages are to be closely approximated by drawing reasonable and probable inferences from the facts proven. *Murphy v. Central Bank & Trust Co.,* 699 P.2d 13 (Colo.App.1985).

■ Here, the trial court concluded that equity dictated that the wife be put in the position in which she would have been had the husband sold her shares when he sold his own. This remedy served the purpose of doing justice under the particular circumstances, *see Dlug v. Wooldridge,* 189 Colo. 164, 538 P.2d 883 (1975), and restoring to wife the benefit which husband instead had received. *See* Restatement (Second) of Restitution § 138(1) (1936). *See generally Leyden v. Citicorp Industrial Bank,* 782 P.2d 6 (Colo.1989).

In our view, the court properly placed itself in the husband's position at the time he sold his shares without using the advantage of hindsight as prohibited by *Heller v. First National Bank,* 657 P.2d 992 (Colo. App.1982). The evidence revealed that if

wife's shares had been sold by husband along with his own, she too would have profited in the same way that husband had. Hence, there was no error in valuing the shares as of that date. *See People in the Interest of M.S.H.*, 656 P.2d 1294 (Colo. 1983).

## IV.

Finally, as to costs, we agree with husband that the trial court should have disallowed the witness fees associated with Mr. Middleton's deposition. *See Shultz v. Linden–Alimak, Inc.*, 734 P.2d 146 (Colo.App. 1986); § 13–16–122(1)(g), C.R.S. (1987 Repl. Vol. 6A). However, the award of the remaining costs were within the court's discretion. *See Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 661 P.2d 296 (Colo.App.1982).

The husband's other contentions are without merit.

The judgment on the merits is affirmed. The costs of Mr. Middleton are reduced by 2.25 hours at the rate of $80 per hour, or $180, and the cause is remanded to the trial court with directions to so modify the judgment as to costs.

PIERCE and PLANK, JJ., concur.