W. Dean SMITH, Plaintiff–Appellee
and Cross–Appellant,

v.

John R. MEHAFFY and Martin & Mehaffy, LLC, Defendants–Appellants
and Cross–Appellees.

No. 99CA1485.

Colorado Court of Appeals,
Div. I.

Nov. 9, 2000.

As Modified on Denial of
Rehearing Dec. 21, 2000.

Certiorari Denied Aug. 20, 2001.*

---

* Justice KOURLIS would grant as to the following issue: Whether the court of appeals erred in holding that pre-judgment interest in a negligent legal malpractice case should be calculated from the date of the accrual of the claim rather than from the date of the breach of duty by the attorney.

Law Offices of Gary S. Cohen, Gary S. Cohen, Christine Van Coney, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

White & Steele, P.C., John Lebsack, Thomas B. Quinn, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge ROTHENBERG.

In this legal malpractice action, defendants, John R. Mehaffy and Martin & Mehaffy, LLC, appeal from a judgment entered on a jury verdict in favor of plaintiff, W. Dean Smith. Smith cross-appeals the trial court's order denying his request for attorney fees. We affirm in part, reverse in part, and remand with directions.

Smith and his partner terminated their business relationship in early 1996. Because they had signed personal guaranties for the benefit of various creditors of the business, Smith mailed notices by first class mail to the creditors stating that he no longer intended to be bound by his personal guaranties.

Smith and his partner also retained defendants to represent them in connection with the severance of their business relationship, and they met with Mehaffy on August 20, 1996. At this meeting, Smith discussed the personal guaranties with Mehaffy but the nature of the discussion was disputed.

Smith maintains that he told Mehaffy the notices of revocation had been sent by first class mail, and that he had asked if certified mail was necessary. According to Smith, Mehaffy said certified mail was unnecessary because "notice is notice." Mehaffy does not recall giving Smith advice about the legal sufficiency of the notices to the creditors.

Smith's former partner later defaulted on three of the business debts and filed for bankruptcy. The creditors sought payment from Smith, and all three denied that they had received Smith's notice. Smith retained an attorney other than defendants to defend against the creditors' claims, but apart from his recollection, Smith had no evidence to prove that he had sent the notices.

After settling the three claims for $42,100, including interest, Smith filed this legal malpractice action against defendants. Smith maintained that defendants were negligent in failing to protect him from exposure for his personal guaranties. Smith's position was that defendants should have advised Smith to send adequate notice to the creditors, so that if the creditors denied receiving notice—as

they did here—Smith would have been able to prove it was sent.

Following a two-day jury trial, the jury found in favor of Smith. Defendants do not appeal from the jury verdict finding them negligent. They appeal only from the order granting partial summary judgment in favor of Smith, the directed verdict against defendants on comparative negligence, and the award of prejudgment interest.

## I.

■ Defendants contend the trial court erred in concluding Smith's settlement of the creditors' claims was reasonable and necessary, and in granting summary judgment in favor of Smith on that issue. Defendants claim that the affidavit submitted by Smith's expert was conclusory and that the affidavit, combined with Smith's own affidavit, created a genuine issue of material fact. We disagree.

■ Review of a summary judgment is *de novo. See Aspen Wilderness Workshop v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Summary judgment may be granted if there is no genuine issue as to any material fact. The burden to so demonstrate is on the moving party, *see Polk v. Hergert Land & Cattle Co.,* 5 P.3d 402 (Colo.App.2000), and the nonmoving party is entitled to all favorable inferences that may be drawn from the undisputed facts. All doubts must be resolved against the party seeking summary judgment. *See Van Alstyne v. Housing Authority,* 985 P.2d 97 (Colo.App.1999).

The moving party satisfies his or her burden by demonstrating a lack of evidence in the record to support the nonmoving party's case. *See Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991)(summary judgment properly granted based on affidavit presented by moving party).

■ Affidavits by experts may be used to support a motion for summary judgment. *See Conrad v. Imatani,* 724 P.2d 89 (Colo. App.1986). But, affidavits containing mere conclusions do not satisfy the moving party's initial burden. *See Ginter v. Palmer,* 196

Colo. 203, 585 P.2d 583 (1978). Once the movant has shown the absence of a genuine issue of material fact, the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but must demonstrate by admissible evidence that a real controversy exists. C.R.C.P. 56(e).

Here, Smith submitted evidence showing the demands of the creditors and the resulting settlement. The record discloses that Smith faced potential liability exceeding $100,000, and he submitted his own affidavit asserting that a loss at trial would have ruined him financially. Smith also submitted an affidavit from a licensed attorney who had analyzed the merits of the creditors' claims and the risks inherent in proceeding to trial, and who expressed the opinion that: (1) the settlement was a prudent course of action for Smith; (2) the settlement of $42,100 was reasonable and necessary.

Contrary to defendants' contention, we conclude the attorney's affidavit was not merely conclusory. As an expert, the attorney was qualified to set forth a basis for his opinion that the amount of settlement was reasonable and did so. That opinion was unrebutted. Nor do we agree that Smith's own affidavit conflicted with the attorney's affidavit such as to create a genuine issue of material fact, as occurred in *Westerman v. Rogers,* 1 P.3d 228 (Colo.App.1999) (documents provided by moving party were in conflict so as to create a genuine issue of fact by themselves).

Once Smith provided evidence that no genuine issue of fact existed, under C.R.C.P. 56(e) the burden shifted to defendants to show that a genuine issue of material fact remained, *see Civil Service Commission v. Pinder, supra,* and defendants submitted no affidavits or other evidence refuting Smith's statements of fact.

Given this record, we conclude the trial court did not err in determining that there was no genuine issue of material fact regarding the reasonableness and necessity of Smith's settlement of the underlying claims. *See Polk v. Hergert Land & Cattle Co., supra; Westerman v. Rogers, supra.* Hence, summary judgment on that issue was proper.

## II.

■ We also reject defendants' contention that the trial court erred in directing a verdict for Smith on the defense of comparative negligence, thereby striking that defense, and in refusing to instruct the jury on the defense of comparative negligence.

■ A directed verdict is proper if the facts are not in conflict, are susceptible of one reasonable interpretation, and if no reasonable jury could decide the issue against the moving party. *See Evans v. Webster*, 832 P.2d 951 (Colo.App.1991). In reviewing the granting of a directed verdict in a jury trial, all legitimate inferences must be made in favor of the non-moving party. *See Ferguson v. Gardner*, 191 Colo. 527, 554 P.2d 293 (1976).

■ Colorado has recognized the defense of comparative negligence in legal malpractice claims. *See Scognamillo v. Olsen*, 795 P.2d 1357 (Colo.App.1990). But, for such a defense to apply, the client's alleged negligence must have related both to the injury alleged to have been caused by the attorney's negligence and to the attorney's representation. *See McLister v. Epstein & Lawrence*, 934 P.2d 844 (Colo.App.1996).

■ For example, a comparative negligence instruction is proper in legal malpractice actions involving negligence when there is evidence that the client: (1) failed to supervise, review, or inquire as to the representation; (2) refused to follow the attorney's advice or instructions; (3) failed to provide the attorney with essential information; (4) failed to mitigate damages caused by the attorney's negligence; or (5) interfered with the attorney's representation. *McLister v. Epstein & Lawrence, supra.*

The issue here was whether Mehaffy's advisement concerning Smith's previous notice met the standard of care of a reasonable attorney. According to defendants, a comparative negligence instruction was proper because Smith himself had been negligent in sending the notices by regular rather than certified or registered mail, and in keeping poor records which contributed to his loss. Defendants also claim that Smith had failed to provide them with the essential information that Smith's business partner had financial difficulties. We are not persuaded.

■ In *McLister v. Epstein & Lawrence, supra*, a division of this court upheld the trial court's refusal to allow the comparative negligence defense where the defendant-attorney knew of the client's alleged negligent conduct at the time the attorney agreed to represent the client. Thus, under *McLister*, a client's mistake made before the attorney was hired cannot be considered to be comparative negligence and raised as a defense by the attorney in a legal malpractice action.

Defendants concede that *McLister* supports the trial court's ruling here, but urges that the case was wrongly decided. We disagree and similarly conclude that because any negligence by Smith preceded his consultation with Mehaffy, it did not relate to the defendants' representation as a matter of law.

Contrary to defendants' contention, we also conclude that whether defendants knew Smith's former business partner had financial difficulties was not essential information in this case, nor was it relevant in determining the sufficiency of defendants' advisement to Smith regarding the notice to creditors.

Therefore, we reject defendants' assertion that the trial court erred in directing a verdict in favor of Smith on the comparative negligence issue.

## III.

■ However, we do agree with defendants that Smith was not entitled to prejudgment interest from the date of his first meeting with Mehaffy, but rather, only from the date that Smith's action against defendants accrued.

A prevailing party may recover prejudgment interest. Section § 5–12–102(1), C.R.S. 2000.

Section 5–12–102(1)(b), C.R.S.2000, further provides that:

Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after

they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Decisions construing § 5–12–102(1)(b) have held that plaintiffs in all types of cases are entitled to interest from the time their actions accrue. *See Isbill Associates, Inc. v. City & County of Denver*, 666 P.2d 1117 (Colo.App.1983).

In breach of contract cases, non-breaching parties have been permitted to recover prejudgment interest from the time of the breach. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989). The theory is that the breach itself makes the conduct wrongful. *See Vento v. Colorado National Bank*, 907 P.2d 642 (Colo.App.1995)(relying on *Mesa Sand & Gravel Co. v. Landfill, Inc., supra*, panel allowed prejudgment interest in breach of fiduciary duty case from the date of the breach, concluding that the harm to plaintiff was caused on that date).

However, where a demand for payment is an element of plaintiff's claim, prejudgment interest has been held not to commence until the demand for payment is made because that is the date when the wrongful withholding occurs. *See National Surety Corp. v. Citizens State Bank*, 734 P.2d 663 (Colo.App. 1986)(in conversion action, the owner's demand for its return and the converter's refusal are predicates to a successful claim); *W.H. Woolley & Co. v. Bear Creek Manors*, 735 P.2d 910 (Colo.App.1986) (payment not wrongfully withheld in a *quantum meruit* action until it was properly demanded and refused).

■ For purposes of the statute of limitations, a legal malpractice action against an attorney accrues at the time the client discovers or through the use of reasonable diligence should have discovered the negligent act of the attorney, and the client sustains some damage. *See Palisades National Bank v. Williams*, 816 P.2d 961, 963 (Colo. App.1991)(bank's legal malpractice action had accrued because it knew of or should have known of the facts giving rise to a claim against the attorney and "because it had already sustained some damage"); Restatement (Second) of Torts § 328A (1979)(in a

negligence action, plaintiffs have the burden of proving, *inter alia*, that they have "in fact suffered harm of a kind legally compensable by damages"). *See also Morris v. Geer*, 720 P.2d 994, 997 (Colo.App.1986)("[T]he focus is on a plaintiff's knowledge of facts which would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney."). The focus is on a plaintiff's knowledge of facts which would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney.

We conclude that the same definition of accrual should apply here, and that Smith's action accrued when he discovered or through the use of reasonable diligence should have discovered Mehaffy's negligent act and he suffered damages caused by that negligence. That determination is a question of fact, *see Morris v. Geer, supra*, and on remand the trial court is directed to modify the judgment to award Smith prejudgment interest from the date of the accrual.

### IV.

Finally, Smith contends the trial court erred in denying his request for attorney fees based on the fiduciary relationship inherent in the attorney-client relationship. We disagree.

■ Colorado follows the American rule which holds that, absent statutory authority, an express contractual provision, or a court rule, the parties in a lawsuit are required to bear their own legal expenses. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Bernhard v. Farmers Insurance Exchange*, 915 P.2d 1285 (Colo.1996).

■ An exception is when the fees are the subject of the lawsuit itself, *see Bunnett v. Smallwood*, 793 P.2d 157 (Colo.1990), or when a party brings suit against a fiduciary for breach of trust. *See Bernhard v. Farmers Insurance Exchange, supra; Buder v. Sartore*, 774 P.2d 1383 (Colo.1989).

In *Bernhard v. Farmers Insurance Exchange, supra*, concluding that a quasi-fidu-

ciary relationship existed, the supreme court refused to allow attorney fees in a bad faith cause of action between an insured and an insurer. While the court did state that "attorney fees may be recoverable in an action for breach of fiduciary duty as a recognized exception to the American rule," *Bernhard v. Farmers Insurance Exchange, supra,* 915 P.2d at 1289, the court cited *Buder v. Sartore, supra,* and *Heller v. First National Bank,* 657 P.2d 992 (Colo.App.1982), both of which involved breach of fiduciary duty by a custodian of funds. *See Stevens v. Moore & Co. Realtor,* 874 P.2d 495 (Colo.App.1994)(interpreting *Buder* as applying only to breach of trust actions involving misuse of a beneficiary's monetary funds).

We acknowledge that the attorney-client relationship involves a fiduciary relationship as a matter of law. *See Olsen & Brown v. City of Englewood,* 889 P.2d 673 (Colo.1995). However, we reject Smith's contention that every plaintiff who prevails against an attorney in a legal malpractice action is *ipso facto* entitled to an award of attorney fees under the breach of fiduciary duty exception to the American Rule.

Legal malpractice is a generic term for at least three distinct causes of action available to clients who suffer damages because of their lawyers' misbehavior. Clients wronged by their lawyers may sue for damages based on (1) breach of contract, (2) breach of fiduciary duty, or (3) negligence. *See Joyce v. Garnaas,* 295 Mont. 198, 983 P.2d 369 (1999); R. Anderson & W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle,* 47 SMU L.Rev. 235 (1994)(arguing for careful distinctions among contract, tort, and fiduciary duty causes of action for legal malpractice).

As fiduciaries, attorneys have the two-fold legal duty of undivided loyalty and confidentiality. *See* 2 R. Mallen & J. Smith, *Legal Malpractice* § 14.2 (4th ed.1996). A breach of the duty of undivided loyalty occurs when an attorney obtains a personal advantage in dealing with a client, or when the attorney creates circumstances that adversely affect the client's interests. A breach of confidentiality may occur as an independent wrong or as part of the breach of loyalty. *See* R. Mallen & J. Smith, *supra.*

Legal malpractice actions based on negligence concern violations of a standard of care, whereas legal malpractice actions based on breach of fiduciary duty concern violations of a standard of conduct. *See* R. Mallen & J. Smith, *supra.* Recognizing this important distinction between an attorney's breach of fiduciary duty and an attorney's act of negligence, a division of the Utah Court of Appeals recently held an attorney's breach of loyalty to a client does not necessarily mean that the attorney acted negligently. *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283 (Utah App.1996).

Similarly, a panel of this court observed in *Moguls of Aspen, Inc. v. Faegre & Benson,* 956 P.2d 618, 621 (Colo.App.1997) that:

> [I]n effect any alleged malpractice by an attorney also evidences a simultaneous breach of trust; *however, that does not mean that every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty.* (emphasis added)

The panel in *Moguls of Aspen* recognized that while legal malpractice actions may involve a simultaneous breach of trust, a claimed fiduciary violation may also be separate and independent from any alleged negligence. The panel thus concluded that although the client's allegations against the attorney were serious, they nevertheless were grounded upon the attorney's alleged negligence and lack of due diligence, but did not necessarily constitute a breach of fiduciary duty. *See Moguls of Aspen, Inc. v. Faegre & Benson, supra,* 956 P.2d at 621 ("circumstances may exist in which a lawyer may be guilty both of malpractice and of other violations of his or her fiduciary obligations" but this was "not such a case").

Here, it is undisputed that Smith sought Mehaffy's expertise and professional counsel. Smith also established that Mehaffy was negligent in failing adequately to advise him of the proper method of giving notice to creditors. However, because there was no evidence of breach of a recognized

## 734

standard of conduct such as the duty of undivided loyalty or confidentiality, there was no breach of fiduciary duty.

We therefore conclude, as did the trial court, that Smith's actions here did not fall within the breach of fiduciary duty exception to the American rule. Therefore, he was not entitled to an award of attorney fees. *See Bernhard v. Farmers Insurance Exchange, supra; Stevens v. Moore & Co. Realtor, supra; Moguls of Aspen, Inc. v. Faegre & Benson, supra.*

The judgment is affirmed in all respects except for the calculation of prejudgment interest. That portion of the judgment is reversed, and the cause is remanded for correction of such interest in accordance with the views expressed in this opinion. The order denying attorney fees is also affirmed.

JUDGE METZGER and JUDGE PLANK, concur.