**PORTER CONSTRUCTION SERVICES, INC. and Bruce Porter, Plaintiffs–Appellees,**

v.

**EHRHARDT, KEEFE, STEINER, AND HOTTMAN, P.C., Defendant–Appellant.**

### No. 03CA1998.

Colorado Court of Appeals, Div. II.

Aug. 25, 2005.

Rehearing Granted Aug. 25, 2005.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

Peterson Dymond Reagor, LLP, Michael W. Reagor, Englewood, Colorado, for Plaintiffs–Appellees.

Montgomery, Little & McGrew, P.C., William H. Knapp, Patrick T. O'Rourke, Greenwood Village, Colorado, for Defendant–Appellant.

ROTHENBERG, J.

In this accounting malpractice action, defendant, Ehrhardt, Keefe, Steiner, and Hottman, P.C. (Ehrhardt), appeals the trial court's judgment awarding prejudgment interest to plaintiffs, Porter Construction Services, Inc. (Porter Construction) and Bruce Porter (collectively Porter). Ehrhardt's sole contention on appeal is that the trial court miscalculated the prejudgment interest awarded to Porter. We disagree and therefore affirm.

The following facts are undisputed. In 1998, Ehrhardt was hired by Porter to perform year-end accounting reviews of its financial records. Ehrhardt failed to detect that a Porter employee had been embezzling large sums of money and had failed to pay the company's federal employment taxes, which later resulted in the assessment of penalties against Porter by the Internal Revenue Service (IRS). Porter's employees discovered the financial problems in late February or early March 2000 and discovered Ehrhardt's negligence some time later.

Following a trial, the jury found Ehrhardt liable for its negligence, but also attributed some comparative negligence to Porter. The trial court's order does not explain the basis of its calculation of prejudgment interest, but it is undisputed that its calculation dates back to July 1998.

◼ Ehrhardt relies on *Smith v. Mehaffy*, 30 P.3d 727 (Colo.App.2000), and other decisions construing § 5–12–102, C.R.S.2004, which have held that prevailing parties are not entitled to interest under that statute until the time their actions accrue. The division in *Smith v. Mehaffy*, *supra*, held that in a professional negligence case, an action accrues when the plaintiff discovered, or through the use of reasonable diligence should have discovered, the defendant's negligent act *and* the plaintiff suffered damages caused by that negligence. Ehrhardt thus contends that interest should not have been awarded in this case until Porter's employees discovered the financial problems and Ehrhardt's negligence, which occurred in late February or early March 2000.

Porter urges us to uphold the trial court's ruling because its damages were ascertainable in July 1998, when interest and penalties were assessed by the IRS. Porter relies on *Eads v. Dearing*, 874 P.2d 474 (Colo.App. 1993), which emphasizes that the date when a claim "accrues" is not necessarily the same for purposes of the statute of limitations and for purposes of calculating and awarding interest under § 5–12–102(1)(b).

Notwithstanding certain language in *Smith v. Mehaffy*, *supra*, we agree with Porter.

A prevailing party may recover prejudgment interest, and § 5–12–102(1)(b), C.R.S. 2004, provides that "[i]nterest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs."

◼ Section 5–12–102 is liberally construed to permit the recovery of prejudgment interest. *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 365 (Colo.1989);

*Vento v. Colorado National Bank–Pueblo,* 907 P.2d 642 (Colo.App.1995).

In *Smith v. Mehaffy, supra,* Smith terminated his business and sent notices, by first class mail, to his creditors that he no longer intended to be bound by his personal guarantees. Smith retained attorney Mehaffy and his law firm (collectively Mehaffy) to represent him in connection with the business, and met with Mehaffy in August 1996. Smith maintained that he discussed the personal guarantees with Mehaffy, told Mehaffy the notices of revocation had been sent by first class mail, and asked whether certified mail was necessary. According to Smith, Mehaffy said certified mail was unnecessary because "notice is notice." Mehaffy did not recall giving Smith advice about the legal sufficiency of the notices to the creditors.

After Smith's former partner defaulted on certain business debts and filed for bankruptcy, three creditors sought payment from Smith. They denied receiving his notices, and apart from his recollection, Smith had no evidence to prove he had sent them.

Smith settled the claims and then filed a legal malpractice action against Mehaffy, contending the law firm was negligent in failing to protect him from exposure for his personal guarantees. The jury found in favor of Smith.

As relevant here, Mehaffy appealed from the order awarding Smith prejudgment interest from the date of his first meeting with Mehaffy, which was when Smith received the incorrect legal advice.

The division in *Smith v. Mehaffy* agreed with Mehaffy that Smith had not suffered harm at that time and, therefore, that his action against Mehaffy had not yet "accrued" for the purpose of awarding interest. The division stated:

> For purposes of the statute of limitations, a legal malpractice action against an attorney accrues at the time the client discovers or through the use of reasonable diligence should have discovered the negligent act of the attorney, and the client sustains some damage.
>
> . . .

> We conclude that the same definition of accrual should apply here, and that Smith's action accrued when he discovered or through the use of reasonable diligence should have discovered Mehaffy's negligent act and he suffered damages caused by that negligence.

*Smith v. Mehaffy, supra,* 30 P.3d at 732 (emphasis added) (citations omitted).

Although the use of the word "accrual" and the result reached by the *Smith v. Mehaffy* division are understandable in the context of that case, we disagree with its holding to the extent that it uses the discovery accrual rule of the statute of limitations to determine when interest begins to run.

In *Isbill Assocs., Inc. v. City & County of Denver,* 666 P.2d 1117 (Colo.App.1983), a division of this court determined that the interest statute was unclear with regard to a claim for property damage. After examining the legislative history of § 5–12–102, the *Isbill* division stated: "The legislative history clearly indicates that all cases are to be treated equally regarding the time interest begins to accrue," and further explained:

> A senator who was a joint sponsor of the bill which repealed and reenacted § 5–12–102 in its present form explained, during hearings on the bill, the previous Colorado law on prejudgment interest, the changes in the statute, and its precise implications. He explained that the new section was "an attempt to clear up the mistakes of the past." Specifically, he noted that:
>
> "All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged . . . ."

*Isbill Assocs., Inc. v. City & County of Denver, supra,* 666 P.2d at 1121–22 (emphasis added; quoting Senate Hearings on S.B. 463 (Mar. 12, 1979)).

As we read the senator's statement, § 5–12–102 was intended to provide interest to prevailing parties "from the time they were wronged," and that was synonymous with when the action "accrued." Although the cases relied on by the *Smith v. Mehaffy*

division do not use the word "wronged," they support the proposition that a legal malpractice case does not "accrue" for the purpose of interest until the prevailing party is "wronged'," that is, the party actually suffers damages caused by the defendant's professional negligence. *See Noel v. Hoover,* 12 P.3d 328, 330 (Colo.App.2000)(citing cases from other jurisdictions holding that actions for accountant malpractice accrue when the plaintiff is notified of a tax deficiency by the IRS or otherwise has reason to know of the accountant's negligence).

The date a plaintiff discovers it has been injured by malpractice—whether by a physician, an attorney, or an accountant—may be the same or approximately the same date that the plaintiff was "wronged" and suffered damages. However, the date of discovery may also be much later than the date damages occurred. *See Eads v. Dearing, supra.*

Here, for example, Porter's employees did not discover the financial problems caused by the embezzlement until late February or early March 2000. and they discovered Ehrhardt's negligence some time later.

We also agree with the division in *Smith v. Mehaffy* that it would have been improper to award Smith interest *before* he had suffered actual injuries or damages. However, unlike the circumstances in *Smith v. Mehaffy,* Porter was injured much earlier, because it was assessed penalties dating back to 1998 for its failure to pay the company's federal employment taxes. It is clear that Porter would not have been liable to the IRS for such penalties but for Ehrhardt's negligence in 1998 in failing to discover the financial discrepancies.

*Vento v. Colorado National Bank–Pueblo, supra,* is instructive in resolving the issue of when Porter became entitled to prejudgment interest. There, plaintiffs filed a breach of fiduciary duty action against the defendant, who was the trustee of four separate trusts created for members of the plaintiffs' family. The principal property in each trust was an interest in a coal mining tract in Colorado, and the plaintiffs asserted that the trustee violated his fiduciary duties by entering into an unfavorable lease with a coal company, which resulted in economic loss to the plaintiffs. The lease was signed in 1978, and in early 1985, the trustee consented to a change in the lease provisions and to the assignment of the lease to another coal company that wanted to buy the lessee's assets, including all of its mining operations. In March, 1985, the trustee accepted the coal company's offer to pay it a sum of money for completing the transaction and agreed to the proposed modification and assignment of the mining lease.

The trustee argued on appeal, as relevant here, that the trial court erred in awarding prejudgment interest from March 1985, the date he approved the lease modification and assignment. The trustee argued that the phrase "wrongfully withheld" in the prejudgment interest statute related to the date of actual injury, not the date of a defendant's wrongful conduct. According to the trustee, no withholding could have occurred until the plaintiffs' mining royalties actually became due and owing, and the trial court's computation created a windfall for the plaintiffs.

The *Vento* division disagreed and stated:

Whether the nonprevailing party recognized an actual gain or benefit as a result of wrongfully withholding property is irrelevant. Thus, one who is damaged by a breach of duty may recover prejudgment interest from the date of the breach, since it is the breach itself that makes the conduct wrongful. Therefore, the date when plaintiff would actually have received any royalties earned by the coal mining operation is irrelevant to a determination that money was wrongfully withheld from them. Instead, *they are entitled to prejudgment interest from the date defendant breached its fiduciary duty, thus causing the harm that ultimately occurred.*

*Vento v. Colorado National Bank–Pueblo, supra,* 907 P.2d at 647–48 (Emphasis added) (citations omitted).

Here, as in *Vento,* and unlike the circumstances in *Smith v. Mehaffy, supra,* Porter was "wronged" and suffered damages when Ehrhardt breached its duty to them in July 1998. Porter is not receiving a windfall. It is merely being compensated for the harm caused by Ehrhardt from the time it occurred. It is irrelevant that Ehrhardt did not recognize any gain or benefit as a result

of its negligence. *Vento v. Colorado National Bank–Pueblo, supra.*

We therefore conclude the trial court did not err in awarding Porter prejudgment interest under § 5–12–102(1)(b) from July 1998. To the extent that our conclusion is inconsistent with the holding in *Smith v. Mehaffy, supra,* we decline to follow it.

The judgment awarding prejudgment interest is affirmed.

Judge RUSSEL and Judge KAPELKE * concur.